MICHAEL T. ARMOUR, Ph.D., L.L.C.
Licensed Psychologist
225 South Meramec Avenue, Suite 432T
Clayton, Missouri 63105

(314) 965-0101

June 18, 2012

Mr. Paul D'Agrossa
Wolff and D'Agrossa
Attorneys At Law
7710 Carondelet
Clayton, MO 63105

Re: Dominic Pavia

Mr. D'Agrossa:

Mr. Dominic Pavia is a 29 year old, divorced, Caucasian male whom you had referred for a psychological evaluation and psychosexual evaluation. Mr. Pavia is currently facing possible charges regarding the possession of child pornography. You had requested the current evaluation for a detailed history, for an assessment personality factors, for an assessment of risk factors for sexual dangerousness, and for possible treatment recommendations.

Measures utilized:

1) Clinical Interview with Mr. Dominic Pavia on 01/21/2012
2) Psychological testing with the Multiphasic Sex Inventory – II, the Minnesota Multiphasic Personality Inventory – 2 RF, the Hare Psychopathy Checklist – Revised, the STATIC-2002 R, and the Sexual Violence Risk – 20

Before the evaluation started, Mr. Pavia was informed of the possible limitations of confidentiality. He was told that a report could be could be prepared based upon the evaluation, that copies of this report would be submitted to you in your capacity as his attorney, and that you in turn may introduce the report in evidence at which time it would be reviewed by the assigned Prosecuting Attorney and by the presiding Judge. Mr. Pavia stated that he understood these limitations of confidentiality and agreed to continue with the evaluation interview.

## I. Detailed Findings:

### A. Summary of Allegations:

It is the examiner's understanding that Mr. Pavia had previously been arrested for possession of child pornography.

### B. Mr. Pavia's Version of the Alleged Offenses:

When seen for the evaluation, Mr. Pavia stated that he had initially been arrested for possession of child pornography. He stated that at the time he was interviewed in January 2012 that he had not yet been officially charged.

C. Personal and Social History:

When seen for the evaluation, Mr. Pavia stated that he was 29 years old and was born on 02/03/1982 in Normal, Illinois. He reported growing up in Champaign, Illinois. He stated that his adoptive father was Joseph Pavia and that his adoptive mother was Beatrice Poppy. He stated that he had been raised by both adoptive parents. He stated that he has no brothers and one step sister. He stated that he was adopted when he was a couple of months old. He stated that he has no knowledge of his biological family. When asked about his adoptive family's history of psychiatric problems, substance abuse problems, or legal problems, Mr. Pavia stated that his adoptive mother had suffered from depression when he had been growing up. He stated that his adoptive sister had suffered from depression when she had been an undergraduate. He stated that an adoptive and had suffered from alcohol and drug abuse, that his adoptive grandfather had abused alcohol "a long time ago," and that an "X uncle" had abuse cocaine. He stated that to his knowledge no one in his adoptive family has had serious problems with the criminal justice system.

Mr. Pavia stated that he did not know anything about his adoptive mother or about any possible complications while his biological mother was pregnant with him or during his birth. He stated that he had been told that as a young child he had suffered from "multiple ear infections. He stated that he did not know if he had been born on time or not. When asked about his developmental history, he stated that he had been told that he had difficulty learning to talk because of his hearing issues. He stated when asked that he had been adopted through Catholic Social Services in Peoria, Illinois. He stated that his older sister is also adopted and is not from the same birthparents as he.

When asked about significant behavioral problems as a child and youth, Mr. Pavia stated that he and his sister when young had "run away" possibly to their backyard. He stated that as an older teenager, older than age 15, he had run away one time. He stated that he had been in fights as a child and youth; he stated that he had switched from attending a Catholic parochial school to a public school in the fourth grade and that he had problems with bullies but fought back. He stated that he had struck another youth one time with a violin case. He denied problems with stealing. He stated that he tended to be more secretive and prone to lie when he had been in middle school. He stated that he had been more of a “loner” in high school and also lied more in high school. He stated that even if not in trouble, by his high school years he would tell lies about things that he did not have to lie about. He denied problems with cruelty to animals. When asked about fire setting, he stated that he had liked "burning stuff," but was safe about his use of fire and had learned to be safe when he had been in the Cub Scouts and the Boy Scouts. He stated that he had had friends as a child and youth and felt that he had had one close friend. He stated that between the ages of 10 to about 14 he had felt that he and his friends had been "losers." He stated that he had been bullied as a child and youth but then stated that others had tried to bully him. He denied that he had bullied others.

Mr. Pavia reported that he had graduated from Champaign Central High School in Champaign, Illinois and had attended college at the University of Illinois. He stated that he had not repeated any grades in grade school or high school but also stated that he had had

"undiagnosed ADHD." He stated that he had been in special education classes because of his speech problems. He stated that he had had trouble reading out loud but generally had been in gifted classes when he had been in public schools. He stated that he had academic problems at the University of Illinois his first two years which he attributed to his "drinking way too much," and "not going to classes." He stated that he had been looking at pornography excessively during this time. He stated that he had been out of college for about a year and a half, had then worked multiple jobs, and went back to college at the University of Illinois at age 22. He stated that he graduated with a degree in recreational sports and tourism management. Mr. Pavia reported attending law school at Washington University in St. Louis, Missouri, that he began law school in 2008, and that he was graduated from law school in the spring of 2011; he added that he had been in the top 10% of his class. He stated that his teachers "generally loved me." He stated that he had not gotten along well with his peers after the fourth grade when he had switched from parochial to private school. He stated that in high school he had gotten along well with everyone. He stated that he had received mechanical training and that had been involved in a training program through Caterpillar Tractor Company.

Mr. Pavia reported that he has not served in the Armed Forces. He had stated that he had worked for the U.S. Navy for one semester when in school.

Mr. Pavia reported that he has been married one time. He stated that he got married when he was 25 years old and had gotten divorced in the summer of 2010. He stated that he has no children. When asked, Mr. Pavia denied being physically abused or sexually abused as a child or as an adult.

Mr. Pavia reported that he currently works as a clerk at a law firm in the St. Louis area. He stated that he had worked for Caterpillar Tractor Company for a year, that he had been on an internship for the U.S. Navy, and that he had done parks and recreation work for the Peoria Park District for about a year and a half. He stated that he generally had gotten along well with all of his supervisors with the exception of one supervisor at the Peoria Park District. He stated that he had gotten along well with his coworkers.

Mr. Pavia reported having his first drink of alcohol at age 18 and first becoming intoxicated on alcohol at about that same time. He stated that he had "drunk a ton" from age 18 to about age 20 or 21 and admitted that he would get intoxicated six nights a week. He described himself now as only an occasional user of alcohol. When asked about symptoms of alcohol abuse or dependence, Mr. Pavia reported that he had experienced memory lapses or "blackouts" when younger but denied recently experiencing this symptom. He denied tremors due to withdrawal. He was not certain if his heavy use of alcohol in his late teens and early 20s qualified as binge drinking. He denied morning drinking to control hangover and withdrawal. He denied being cited for DWI. When asked about his use of other drugs, Mr. Pavia stated that he had used "a lot" of marijuana in the past, that he had used psychedelic mushrooms, that he had used "ecstasy" "a few times," and that he had used "special K" "a few times. He stated that he had smoked opium on one occasion. He stated that he had used "speed" in the form of over-the-counter stimulants. He denied other drug experimentation or use. He stated that he had had outpatient chemical dependency counseling in either the 10th and 11th grades of high school and that he completed this treatment.

When asked about his physical health, Mr. Pavia stated that his physical health was "not great." He stated that he has controlled hypertension and that he needs to lose weight. He stated that he had surgery in that he had three sets of tubes inserted in his ears when he had been a child. He stated that he currently takes two medications for hypertension, Concerta for ADHD, and Setraline for his compulsiveness.

Mr. Pavia stated that he first saw a mental health counselor when he was involved in the chemical dependency treatment on an outpatient basis in his later high school years in Champaign, Illinois. He also reported going to grief counseling to Grace Hospice program at age 19 or 20. He reported that around this time within a six-month period he had lost his grandfather, another grandparent, two friends, his former scoutmaster, and a cousin. He stated that at age 22 he saw a psychologist at the University of Illinois because of his ADHD. He stated that he also saw a psychiatrist in Peoria, Illinois for about three months because of his ADHD. He stated that he had seen a psychiatrist and a psychologist through Washington University in St. Louis for his ADHD, for reactions to his divorce, and for treatment over his use of child pornography. He stated that Dr. Boesch, his treating psychiatrist, started him on Sertraline for his compulsiveness. He stated that his current therapist is Mr. Patrick Fleming and that he sees Mr. Fleming for "sexual addiction." He stated that he also sees Dr. Jack Croughan, a psychiatrist, for his ADHD and has been prescribed Sertraline for his obsessiveness. He stated that he attends Sexual Compulsiveness Anonymous, a 12 step program modeled after Alcoholics Anonymous, twice a week. He reported that he has not received inpatient psychiatric treatment.

Mr. Pavia stated that he has not been arrested as a juvenile. He stated that he has not been arrested as an adult with the exception of his arrest on his current charge. He stated that he has not yet been officially charged at the time of the January 2012 interview.

Mr. Pavia stated that he currently lives with his girlfriend on North Taylor Avenue in an apartment in St. Louis, Missouri.

When asked about his earlier comments about being treated for obsessive – compulsive behavior and thoughts, Mr. Pavia stated that when he gets involved in something, he tends to go all out and this new interest becomes his "addiction." He stated that this is what had happened with his use of marijuana, alcohol, and slot machines. When asked about his use of pornography, he stated that he had been compulsive and driven to gather more and more pornography. He stated that he began viewing pornography at age 14 or 15 and that he was then viewing "print porn" and that he spent time looking for sexually graphic scenes in books. He stated that he began looking on the Internet for pornography as an undergraduate and he would look for "whatever I could find at first." He stated that he had initially looked at adult pornography and that he began looking at child pornography around age 20 when he had dropped out of the University of Illinois. He stated that he is not especially drawn to child pornography but that he is drawn to "taboo material." He stated that when he had first been in school at the University of Illinois, he spent about an hour a day viewing pornography. He stated that beginning his sophomore year of college, he would spend up to four hours a day viewing pornography. He stated that for the 1 1/2 years that he was out of college he would spend 4 to 5 hours a day viewing pornography. He stated that when he returned to college, the amount of time he spent

viewing pornography dropped down to about an hour a day. He stated that after he graduated from college he did not have Internet access. He stated that he still looked at a wide sample of different adult pornography material. He stated that his pornography use increased after he had gotten married. He added that his marriage had been "a bad idea." He stated that when in law school, he viewed pornography for about two hours a day. He stated that he was looking primarily at adult material but that he then began looking at pornography rather than studying. He admitted that he had masturbated and touched himself sexually while viewing different adult material. He stated that although he had saved a lot of his pornography he did not go back and review much of his saved material and that he was instead driven to always find new material. He stated that child pornography became more his focus during the time of his separation and eventual divorce. He stated that he felt bad about himself and was living alone again. He stated that he began downloading different material. He stated that he was using the Line Wire file system and admitted that he was looking for "rougher stuff" in terms of pornography but that he did not have a singular focus on a particular type of pornography. He stated that he was looking for different types of material.

Mr. Pavia stated that he was looking for more “bondage and dominance” material but then began looking for more child pornography material. He stated that he wanted to stop viewing this material but that he was drawn back to view this material. He admitted that he knew the risk he was taking in looking at this material. He stated that he had been "all over" in terms of the type of child pornography material he viewed. He admitted that he had masturbated and touched himself sexually in response to child pornography material.

When asked how he had been caught, Mr. Pavia stated that he thought that he had disabled the file sharing program on his LimeWire program. He stated that he never traded or talk to anyone about his viewing of pornography or child pornography. He stated that a "police computer" caught him. He stated that he was arrested on 04/26/2011 by St. Louis County police and that the police searched both his former apartment and his new apartment. He stated that he had been held for 24 hours and was then released.

When asked for more information about his sex life and sexual interests, Mr. Pavia stated that he has had eight different sexual partners over the years. He described himself as "straight" or heterosexual in terms of his sexual orientation. He denied sexual interest in live children. He stated that no accusations have ever been made against him about acting in a sexually inappropriate manner around children. He stated that he has a "disconnect" between the pornography he views and his sexual interests in terms of his sex behaviors with his partners. He denied other paraphilia behaviors. He stated that when married he had been married for about three years. He stated that he and his current girlfriend have been together for about 16 months. He stated later in the interview that he and his girlfriend engage in consensual bondage and dominance behaviors.

When asked how he made sense out of his viewing of pornography and child pornography, Mr. Pavia stated that his viewing of pornography as a whole has a lot to do with his perceived inadequacies of himself in social situations. He stated that he did not see the characters in the different pornography as real and that to some extent he was "numb" to the situations and

feelings of the individuals in the different types of pornography. He stated that he later felt ashamed because of viewing this type of material but was still drawn to look for new material.

D. Mental Status Examination (as of 01/21/2012):

When seen for the evaluation, Mr. Pavia presented as a Caucasian male of average height and medium build. He is mildly overweight. He has a beard and mustache and wears eyeglasses. He was on time for his scheduled appointment. He was awake and alert, and oriented to person, place and time. His speech was of normal rate, average rhythm, and adequate volume. His speech was clear and easily understood. His speech and thought patterns flowed in a logical, sequential, and goal – directed manner and for negative for signs of loose associations, tangential thinking, or circumstantial thinking. His mood during the evaluation session was serious. His affect or perceived emotion was limited in range in that he did not show much emotional expression or variation during the interview but the emotion he did show was appropriate to the emotional tone of the subjects discussed and to his self-report of his mood.

When asked about first rank symptoms indicative of an ongoing psychotic thought disorder, Mr. Pavia denied experiencing and gave no verbal or behavioral signs of experiencing symptoms of audible thoughts, thought broadcasting, thought insertion or withdrawal, or thought control. He denied that his mind "played tricks" on him, and he also denied experiencing auditory or visual hallucinations. He did not engage in any behaviors or make any statements during the evaluation suggesting that he was responding to internal stimuli. His thought content was negative for bizarre, persecutory, or grandiose beliefs.

Mr. Pavia described his current sleep pattern as "pretty well these days," and denied current problems falling asleep or remaining asleep. He described his appetite generally as good; he stated that he sometimes over-eats and described this as "stress eating." He stated that he is about 5'10" tall and weighs about 200 pounds. He described his current energy level as "pretty good." He denied past episodes of excessive energy. He described his mood as "mixed bad." He stated that at times he can feel "pretty good" because that he had "a lot lifted off of me" by the discovery of his viewing of pornography. He added that he has not looked at any pornography for "a long time." He also stated, however, that he has "a lot of stress in my life." He denied feeling depressed. He denied having crying spells. He denied current suicidal ideation, intent or plan. He denied homicidal or assaultive ideation, intent or plan.

His intellect is estimated to fall within the superior range based upon his report of his educational history. His long-term memory was assessed as grossly intact based upon his ability to give a detailed social history which appeared to be internally consistent. He reported a history of treatment for ADHD. His concentration and focus were adequate for this evaluation. His insight and judgment are currently adequate for his safety. His insight and judgment are adequate in that he currently is in treatment for his viewing of pornography.

E. Test Results and Interpretation:

On the **Minnesota Multiphasic Personality Inventory-2 RF**, Mr. Pavia responded to test items in a consistent and reliable manner. Configuration of the main validity profiles

indicates that he responded to test items in a consistent manner, did not respond randomly to test items, and did not endorse rare or unusual symptoms not endorsed by subjects in the general normative group or by subjects with legitimate mental illness. His response pattern did not indicate that he was over-endorsing rare or usual symptoms of mental illness, physical complaints and symptoms, or memory problems. His validity profile was within the normal range and was not suggestive of a "fake bad" or "fake good" response stance. His clinical scales indicated that he did not endorse significant problems with depression, somatic complaints, being overly cynical, antisocial attitudes and behaviors, paranoid ideation, rumination, bizarre thought or thought processes, or mania. He did endorse problems with social avoidance and introversion.

On the **Multiphasic Sex Inventory II**, Mr. Pavia generated a valid and interpretable profile regarding his sexual attitudes and behaviors. The reliability and validity scales all fell within the normal range, indicating reliable results and that he was not trying to minimize or deny sexual issues, attitudes, or problems. He specifically did not fall in the "look good" or "fake good" range in terms of his response stance to inventory items. Clinical factors noted on the MSI-II indicated that Mr. Pavia sees himself as more emotionally needy, as wanting affection, and as fearing that he will be embarrassed or seen as inadequate by others. He reports having sexual arousal on themes of bondage-discipline and inflicting sexual pain on others. He reported being "addicted" to pornography. He scored in average ranges on measures comparing his responses to child molesters and rapists; at the same time he scored too low on the Child Molest Deviant Arousal subscale to suggest he admits to having had deviant sexual desires by fantasies involving a child or minor. He was assessed as being relatively disclosing about his past preoccupation with sex, that he did not report current sexual preoccupation, and he admitted to past "addiction" to pornography. He scored very low on the Denial Scale and did not use any excuses for having engaged in his sexual impropriety. He also did not engage in any justifications for having committed a sexual offense. He was assessed as being a potentially positive candidate for treatment.

**The Hare Psychopathy Checklist-Revised (HCL-R)** is a semi-structured actuarial instrument used to assess the degree of psychopathy in a person. Psychopathy as a psychological construct is related to but different from the DSM-IV diagnosis of Antisocial Personality Disorder. Mr. Pavia scored in the low range of the HCL-R, indicating that he does not qualify for a finding of Psychopathy. Individuals falling in this range as a rule are not seen as dangerous to others.

**The SVR-20 (Sexual Violence Risk-20)** is an actuarial instrument used to assess the presence or absence of factors known to be associated with sexual violence and dangerousness. Mr. Pavia's history overall is positive for risk factors including sexual deviation in that he admits to involvement in consensual bondage and dominance behaviors and to "addiction" to pornography, past substance abuse, and to escalation in the past in his involvement with pornography. His history and interview results are negative for risk factors including being a victim of child abuse, psychopathy, suffering from a major mental illness, suicidal or homicidal-assaultive ideation, relationship problems, employment problems, past nonsexual violent offenses, past nonviolent offenses, past supervision failures, physical harm to any victims, use of weapons or threats of death, and denial of offenses. Configuration of his risk factors taken in

consideration with other assessment results indicates that he is at low risk for sexual violence. This is the lowest risk level used by this instrument and other risk assessment instruments.

The **STATIC-2002 R** is an actuarial risk assessment instrument used to assess the likelihood of sexual offending based on research-identified criteria and research-derived offense rates. Mr. Pavia's history as applied to the STATIC-2002 R factors results in a score of 2 which falls in Low Risk Category; it should be noted that Mr. Pavia's score of 2 is based solely on his age which is a ratable factor on the STATIC-2002 R. Mr. Pavia falls in the "routine sample" for offense rate comparisons on the STATIC-2002 R since he does not suffer from a severe personality disorder or have a history of prior violent sexual offenses. The estimated five year recidivism rate for a person with a score of 2 is 2.2%. Again, it should be noted that this is a recidivism rate and Mr. Pavia has not previously been convicted of any sexual offenses.

## II. Diagnosis:

Axis I: Paraphilia NOS (pornography) 302.9
Attention Deficit Hyperactivity Disorder, inattentive type 314.00
Alcohol Abuse by history 305.00
Cannabis Abuse by history 305.20

Axis II: no diagnosis

Axis III: per Mr. Pavia's report and review of records: hypertension; mild obesity

Axis IV: pending prosecution

Axis V: GAF current: 55 – 60

The examiner utilized the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision in the formulation of these diagnoses.

Paraphilia refers to recurrent, intense sexually arousing fantasies, sexual urges, or behaviors that generally involve nonhuman objects, the suffering or humiliation of oneself or one's partner, or children or other nonconsenting persons. Mr. Pavia reports that he had collected a range of sexually explicit material involving children, adults, and bondage-dominance themes. He stated that he at times had been driven to collect more and varied pornography. The diagnosis of Paraphilia NOS is used to address Mr. Pavia's use of pornography.

Attention Deficit Hyperactivity Disorder is a persistent pattern of inattention and/or hyperactivity-impulsivity that is more frequently displayed and is more severe than is typically observed in individuals at a comparable level of development. Impairment from symptoms of ADHD must be present in at least two settings such as at home and school. Symptoms include problems with inattention, hyperactivity, and impulsivity. Mr. Pavia reports a history of the inattentive type of ADHD when he was a child and youth.

Alcohol Abuse and Cannabis Abuse are used to address Mr. Pavia's report of past abuse of both alcohol and cannabis.

**III. Discussion:**

Mr. Pavia presents as a 29 year old divorced Caucasian male who had been arrested for possession of child pornography. He reported when seen in January 2012 that he had not yet been formally charged. He described a pattern over time of increasing preoccupation with and time spent in viewing and collecting different types of pornography including child pornography. He reported that he had not traded or discussed child pornography with anyone else. He reports that his sexual orientation is heterosexual, that he has not been accused previously of sexually violent behaviors against others, and that he has engaged in consensual "bondage and dominance" sexual behaviors with consenting partners. He denied sexual interest in live children and again reported that he has not engaged in any sexually inappropriate or violent behaviors with live children.

Test results indicate that he is more socially introverted but that he also does not currently suffer from symptoms of depression, paranoia, bizarre thoughts, or psychopathy. He was assessed with a number of different risk assessment instruments, and consistently scored in the lowest risk category utilized by these instruments. It is the examiner's opinion that he is not at significant risk of being sexually dangerous toward others. He reports that he currently is in treatment for his obsessive personality style and his sexual preoccupation and addiction.

Current assessment results indicate that Mr. Pavia is a good candidate for further treatment of his emotional issues and his sexual preoccupation. As opined, he currently is not at significant risk to sexually or otherwise harm others.

Respectfully submitted,

Michael T. Armour, Ph.D.
Licensed Psychologist